[Cite as *In re R.G.*, 2019-Ohio-570.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: R.G. | : | |
| | : | |
| | : | Appellate Case No. 2018-CA-22 |
| | : | |
| | : | Trial Court Case No. 21630456 |
| | : | |
| | : | (Appeal from Common Pleas Court- |
| | : | Juvenile Division) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2019.

. . . . . . . . . . .

AUTUMN H. WHITE, Atty. Reg. No. 0088672, 201 West Main Street, Second Floor, Troy, Ohio 45373
     Attorney for Appellee, Miami County Children Services Board

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
     Attorney for Appellant, Mother

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Appellant ("Mother") appeals from the juvenile court's judgment entry terminating parental rights to her minor child, R.G., and awarding permanent custody to appellee Miami County Children Services Board (MCCSB). Mother contends that the judgment was against the manifest weight of the evidence.

{¶ 2} We conclude that the evidence in the record is sufficient to support the court's determination that the child could not be placed with either parent within a reasonable time or should not be placed with either parent. In addition, the court's decision that a permanent custody award to MCCSB was in the child's best interest was supported by competent, credible evidence. Finally, the court properly concluded that MCCSB made reasonable efforts to prevent the continued removal of the child and to reunify the family. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of the Proceedings

{¶ 3} MCCSB first came into contact with Mother and R.G. in August 2016, due to allegations that the child was the victim of sexual abuse and that Mother permitted multiple sex offenders to have unsupervised access to the child.[1] MCCSB and Mother developed a voluntary case plan to address the problems. However, this attempt to address the issues was unsuccessful.

{¶ 4} On December 5, 2016, MCCSB filed a dependency complaint alleging that three separate registered sex offenders had been allowed access to R.G. The complaint also alleged that Mother was unemployed and homeless. Mother executed a Voluntary

---

[1] The child, who was born in 2009, was seven at the time.

Agreement of Temporary Custody and the child was placed in foster care.

{¶ 5} An adjudicatory hearing was conducted, and on January 20, 2017, R.G. was adjudicated dependent. A case plan for Mother was filed in conjunction with the dependency adjudication. The case plan required Mother to (1) obtain employment and stable housing; (2) complete parenting classes; (3) participate in family and individual counseling; and (4) submit to drug screens.

{¶ 6} A motion seeking permanent custody was filed by MCCSB on October 2, 2017. The magistrate conducted an in camera interview of R.G. on December 21, 2017. At that time, R.G. expressed her desire to live with her "birth mom," but admitted that doing so would not be in her best interest. A dispositional hearing was conducted on December 27, 2017. At the beginning of the hearing, counsel for Mother requested that the court appoint an attorney to represent the child, since the child's expressed wish to live with her Mother was in direct conflict with the report of the Court Appointed Special Advocate (CASA). The magistrate initially denied the motion. However, at the conclusion of the hearing, the magistrate reversed its decision and appointed independent counsel to represent R.G. Counsel was provided the hearing transcript and permitted to review the case file. Thereafter, an additional hearing was conducted in April 2017, at which time R.G.'s counsel was permitted to call all of the prior witnesses as if on cross-examination.

{¶ 7} During the hearings, testimony was provided by Gerald Ramey, Ph.D., who was a psychologist at Dayton Children's Medical Center. Ramey testified that R.G. was referred to him in March 2017 because of a history of possible sexual abuse. He testified that he conducted three evaluation sessions with R.G. and that he thereafter conducted

30 therapy sessions with her. According to Ramey, the foster parents attended every session. He testified that R.G. exhibited problems with bed wetting, emotional outbursts, problems at school, and masturbating in public, and that he diagnosed her as having adjustment disorder that was caused by abuse and neglect.

{¶ 8} Ramey testified that R.G. "absolutely loves" Mother, but that Mother was a source of "incredible stress and strain" for R.G. He testified that R.G. takes on an adult role with Mother, worries about Mother's welfare, and gets angry because Mother doesn't do "the things that she [is] supposed to do." He further testified that Mother's failure to consistently visit with R.G. had caused the child "incredible anguish" and "serious harm" to the point he deemed it to be "borderline abusive."[2] Finally, Ramey testified that R.G. had shown improvement in her behavior, but that she remained a "very vulnerable child." He testified that it was essential that R.G. have predictability and stability in her life

{¶ 9} Following the hearing, the magistrate filed a decision awarding permanent custody of R.G. to MCCSB. The magistrate concluded that R.G. could not be placed with Mother within a reasonable time, and that she should not be placed with Mother, because Mother had failed to substantially remedy the conditions that caused R.G. to be placed in foster care. The magistrate further found that MCCSB had made diligent efforts to facilitate reunification.

{¶ 10} Mother filed objections to the magistrate's decision. On September 4, 2018, the trial court overruled the objections and found by clear and convincing evidence that R.G. could not be returned to Mother's care within a reasonable time, that MCCSB

---

[2] Although not a required part of her case plan, Mother failed to attend approximately half of the scheduled visitations with R.G.

had made reasonable efforts at reunification, and that it was in R.G.'s best interest to grant permanent custody to MCCSB. Mother appeals.[3]

## II. Analysis

**{¶ 11}** Mother's sole assignment of error provides as follows:

THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO MIAMI COUNTY CHILDREN SERVICES WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED ACCORDINGLY.

**{¶ 12}** Mother's argument appears to center solely upon the claim that she completed her case plan goals and that the child, therefore, should have been returned to her custody.

**{¶ 13}** R.C. 2151.414 authorizes a juvenile court to grant permanent custody to a children services agency upon a finding, by clear and convincing evidence, that the child cannot be placed with either parent within a reasonable time and that an award of permanent custody to the agency is in the child's best interest. R.C. 2151.414(B)(1)(a)

**{¶ 14}** When evaluating whether a child can be placed with a parent within a reasonable time, a court must consider all relevant evidence. R.C. 2151.414(E). This statute identifies specific circumstances under which a trial court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *Id.* One such circumstance exists when, "[f]ollowing the

---

[3] The child's father is not a party to this appeal. He indicated that he had not seen the child for approximately six years and that he did not want custody.

placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1). "In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *Id.*

{¶ 15} When evaluating whether a child's best interest would be served by granting a motion for permanent custody, R.C. 2151.414(D) requires a juvenile court to consider certain factors including: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶ 16} A trial court's decision to grant permanent custody to the State and to terminate parental rights must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the

allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

**{¶ 17}** On appeal of a termination of parental rights, this court applies an abuse of discretion standard, and we will not disturb the trial court's decision if the record contains competent, credible evidence upon which the court could determine that the statutory elements for termination of parental rights have been established. *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14.

**{¶ 18}** When this case was opened, Mother did not have stable housing or food and R.G. was not attending school. After MCCSB gained temporary custody of R.G., Mother refused to disclose where she was residing. MCCSB later learned that she had been in and out of a homeless shelter during August and September 2017. In October 2017, Mother moved to Montgomery County where she began residing with a male friend and his father. During a visit to the residence, it was determined that Mother was sharing a bedroom with her male friend, the father had his own bedroom, and the third bedroom was used for the friend's son. There was no bedroom designated for R.G. Mother was not paying rent for the residence and had no lease. During a later visit to the home, the caseworker smelled the odor of marijuana. Mother stated that one of the men in the residence smoked marijuana. Mother testified that the housing was not permanent and that she was looking for housing. However, she testified that she could not afford a one-bedroom apartment at that time.

**{¶ 19}** Mother did not report any income to MCCSB until July 2017, when she

informed the caseworker that she would be working at a fast-food restaurant and a factory. However, when later asked to produce pay stubs, Mother admitted that she had not started either job. In August, Mother informed MCCSB that she was working at a restaurant, but again, she did not produce any pay stubs. She did obtain employment in October at a restaurant. However, it was determined that she was either on probation or had lost that job after two months, in part for failing to report to work on time. Mother did not present proof of present employment at either the December 2017 or the April 2018 permanent custody hearings.

{¶ 20} The juvenile court found that Mother had failed to substantially comply with the terms of her case plan because she had not obtained stable housing and employment. We conclude that this finding was supported by the record.

{¶ 21} The court further determined that awarding permanent custody of the child to MCCSB was in the best interest of the child. The record makes it clear that R.G. loved and was bonded to her Mother, and that R.G. had expressed the desire to live with Mother. However, it was also clear that Mother remained unable to provide basic necessities to the child.

{¶ 22} The record also supports a finding that R.G. had bonded with her foster parents and that she referred to them as "mom and dad." The foster parents had expressed the desire to adopt R.G. The record shows that they had attended all of R.G.'s counseling sessions with Dr. Ramey and had diligently implemented all suggestions made by Ramey. Ramey testified that the foster parents were the "most conscientious" foster parents he had met. He further testified that R.G.'s behaviors had "stabilized" and that she had responded "exceptionally well" to the consistent routines and

clear guidelines set by the foster parents.

{¶ 23} R.G. was in the custody of her Mother from birth until she was placed in foster care. During that time, they lived with multiple people at different times and never had stable housing or food. R.G. had lived with the same foster parents since she was taken into MCCSB custody and had made progress in her behavior due to the stability of the foster home.

{¶ 24} The CASA volunteer recommended that custody be awarded to MCCSB due to Mother's failure to obtain housing or employment. Ramey testified that the child needed immediate placement in a stable, predictable environment.

{¶ 25} We conclude that the record supports the finding that an award of permanent custody to MCCSB was in the child's best interest.

{¶ 26} Finally, we turn to the issue of whether MCCSB made reasonable efforts to reunify Mother and R.G. We have defined "reasonable efforts" as "a good faith effort which is 'an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.' " *In re Secrest*, 2d Dist. Montgomery No. 19377, 2002-Ohio-7096, ¶ 13, citing *In re Cranford*, 2d Dist. Montgomery Nos. 17085 and 17105, 1998 WL 412454 (2d Dist.1998). "The issue is not whether [MCCSB] could have done more, but whether it did enough to satisfy the "reasonableness" standard under the statute." *Id.* (Citation omitted.)

{¶ 27} In this case, MCCSB made referrals for Mother to obtain the necessary classes and counseling that were set out in her case plan. Further, MCCSB maintained contact with Mother and reviewed her case plan with her on a monthly basis. Indeed, prior to filing a complaint for dependency, MCCSB attempted to work with Mother on a

voluntary basis. Thus, we conclude that the record supports the court's finding that MCCSB made reasonable efforts toward reunification.

**{¶ 28}** Mother's sole assignment of error is overruled.

### III.    Conclusion

**{¶ 29}** Mother's sole assignment of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Autumn H. White
Byron K. Shaw
Joseph Fulker
Hon. Scott Altenburger